**Sidney M. WOLFE and Public Citizen Health Research Group, Plaintiffs,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

Civ. A. No. 85–1033.

United States District Court, District of Columbia.

Nov. 26, 1985.

William B. Schultz, Alan B. Morrison, Washington, D.C., for plaintiffs.

Harold N. Iselin, Dept. of Justice, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOHN H. PRATT, District Judge.

### INTRODUCTION

Plaintiffs, Public Citizen Health Research Group and its director, Sidney Wolfe, M.D., seek disclosure under the Freedom of Information Act (FOIA) of records which indicate the subject matter and interagency transmittal dates of proposed food and drug regulations pending either at the Department of Health and Human Services (HHS) or the Office of Management and Budget (OMB). The parties have stipulated to the material facts about which there is no genuine dispute, and therefore, solely at issue is the novel question of law whether records which reveal the "status" of proposed regulations are exempt from disclosure under Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5). So far as we can determine, this is a case of first impression. For the reasons discussed below, we conclude that the requested information is not exempt.

### FACTUAL BACKGROUND

On July 18, 1984, plaintiffs submitted by letter to the defendant HHS a FOIA request for "access to records which indicate what actions have been completed by the Food and Drug Administration, but which are awaiting a final decision or approval by the Secretary [of HHS and/or OMB]." That letter explicitly stated that plaintiffs were not seeking access to records which disclose the substantive contents of the actions in question, but only to portions of those records which identify the subject matter of those Food and Drug Administration (FDA) decisions which were pending before HHS or OMB for decision or review. By letter dated August 23, 1984, defendant denied plaintiffs access to the requested information on the grounds that it is exempt from disclosure under Exemption 5 of the FOIA. Plaintiffs renewed their request by letter dated March 7, 1985. Plaintiffs did not receive a response within ten working days, nor have they received any response to date. Plaintiffs initiated this law suit on April 1, 1985.

On April 16, 1985, plaintiffs submitted to HHS a second FOIA request which reiterated their first request and in addition sought access to "records which indicate the date on which the record was transmitted from FDA to HHS, and where applicable, the date on which the matter was transmitted from HHS to OMB, and the date on which the matter was transmitted [sic] back from OMB to HHS." On April 19, 1985, defendant denied plaintiffs access to the information on the same grounds their first request was denied. On April 25, 1985, plaintiffs appealed the denial of their second request, which appeal was denied on May 31, 1985, by the Assistant Secretary for Management and Budget of HHS. On June 14, 1985, plaintiffs amended their complaint in this action to include their second request.

HHS maintains a Regulations Log that the parties agree generally contains all the information plaintiffs seek. The log is used by HHS as an internal tracking device that facilitates the Office of the Secretary's ability to follow actions moving through the clearance process. The log contains lists of actions by title and by the departmental component from which they originated and indicates the offices and persons to which the actions are routed and the actual and due dates of relevant steps in the clearance process, including dates on which actions are sent to OMB.

Pivotal to both parties' positions in the instant case is the rulemaking procedure in the area of food and drugs. Virtually all such regulations are initiated by the FDA.

Once FDA determines that regulatory action should be taken, such recommendation is forwarded to the Secretary of HHS, and in turn, is usually sent for review and comments to other HHS offices. These offices then communicate their views, in writing or orally, to the Secretary, and often to FDA and other persons involved in the decisionmaking process. Only in the event that HHS concurs in FDA's recommendation to issue a notice of proposed rulemaking, will HHS submit the proposed rule to OMB for further review pursuant to Executive Order No. 12291, 46 Fed.Reg. 13,193 (1981).

Accordingly, disclosure of the fact that an HHS proposed regulation has been transmitted to OMB will also disclose the fact that HHS has recommended issuance of that proposed regulation. Likewise, disclosure of the fact that a FDA proposal has been transmitted to HHS will also likely disclose the fact that FDA has recommended issuance of that proposed regulation. Nonetheless, FDA may modify, or even rescind, its decision right up until the time when a notice of a proposed rule is sent to the Federal Register for publication. Moreover, HHS may from time-to-time communicate, orally or in writing, with OMB on a wide range of subjects, which may include tentative determinations not to take regulatory actions. Finally, the departmental clearing process is a fluid one and much of the actual process, as carried on through telephone calls and informal questions and comments, is not recorded in the log.

## DISCUSSION

Exemption 5 of the FOIA exempts disclosure of "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Congress intended this exemption to incorporate the government's common law privileges protecting it from discovery in litigation. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515–16,

44 L.Ed.2d 29 (1975). The discovery privilege at issue in the instant case is the "executive" or "deliberative process" privilege, the ultimate purpose of which is to "prevent injury to the quality of agency decisions." *Id.* at 151, 95 S.Ct. at 1516. In construing this privilege, the Supreme Court has afforded its protections only to documents which are pre-decisional, and has further distinguished between "materials reflecting deliberative or policy-making processes on the one hand, and purely factual, investigative matters on the other." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 89, 93 S.Ct. 827, 837, 35 L.Ed.2d 119 (1973). Thus, even if a document is pre-decisional, "the privilege applies only to the 'opinion' or 'recommendatory' portion of [a document], not to factual information which is contained in the document." *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 867 (D.C.Cir.1980).

The burden of showing that the plaintiff's request conforms to the requirements of Exemption 5 falls on the defendant. 5 U.S.C. § 552(a)(4)(B). The parties have stipulated that the plaintiffs are not seeking access to records which disclose the specific contents of the actions in questions and are agreed that such contents, until such time that they are published in the Federal Register, clearly are exempt under Exemption 5. Rather, plaintiffs distinguish their request as seeking information that is factual, not deliberative, and therefore, is not exempt from disclosure under the deliberative process privilege. Defendant responds with two arguments. First, defendant denies that the requested material is entirely factual and submits that disclosure of the requested information would in fact reveal significant substantive aspects of the decisionmaking process. Second, defendant contends that even if the requested material is factual, the details of particular decisionmaking processes are as protected by the privilege as are the recommendations themselves or the advice and rationale underlying the same. We conclude that each of the defendant's arguments is without merit.

*The Nature of the Requested Material*

To assess whether the requested material is factual or deliberative, it is significant to note what information is already available to the plaintiffs. First, the basic scheme of interagency review, whereby regulatory recommendations are transmitted from FDA to HHS, and where applicable, to OMB and back to HHS, is already a matter of public record. Second, pursuant to Executive Order No. 12291, the FDA publishes a semi-annual agenda of proposed regulations that the agency expects to issue. The plaintiffs presently seek material which would allow them to consolidate this information; that is, they seek information which would enable them to ascertain the exact location where proposed regulations are pending and precisely the date when such proposals were transmitted for interagency review. Plaintiffs thus describe their request as one for the "status" of proposed regulations and argue that such information does not reflect advice, opinions, or specific recommendations, but rather consists entirely of factual data. The defendant denies plaintiff's assertion and submits that disclosure would reveal significant, substantive aspects of the decisionmaking process.

The defendant points to four such substantive aspects: (1) that FDA has made a recommendation; (2) that in many cases, plaintiffs and other members of the public will know precisely what the recommendation is; (3) in the case of referrals to OMB, that HHS has tentatively decided to recommend issuance of a proposed regulation; and (4) the priority that the Secretary or other HHS officials attach to the recommendation. As to the first and third of these items, plaintiffs admit that such information would be disclosed, but argue that the content of the information is not deliberative. As to the second item, plaintiffs go so far as to acknowledge that disclosure would enable them to infer that FDA made a recommendation to *proceed* with issuance of a proposed regulation, but

disputes defendant's position that disclosure also would allow them to speculate with a reasonable degree of certainty as to the substance of the recommendation. As to the fourth item, the parties simply disagree as to whether the timing of interagency review implicitly reveals the agencies' priorities.

The government does not cite any precedent on point, nor can we find any authority on which we specifically can rely to determine in the instant case whether the requested information is factual or deliberative. We therefore look to the policies which underlie the privilege. The Court of Appeals for this Circuit has identified three such policies:

> [I]t serves to assure that subordinates within an agency will feel free to provide the decisionmaker with their uninhibited opinions and recommendations without fear of later being subject to public ridicule or criticism; to protect against premature disclosure of proposed policies before they have been finally formulated or adopted; and to protect against confusing the issues and misleading the public by dissemination of documents suggesting reasons and rationales for a course of action which were not in fact the ultimate reasons for the agency's action.

*Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir. 1980). We find that none of these policies would be significantly implicated by disclosure of the requested material. Indeed, the application of these policies to the instant case highlights the fundamental inconsistency of defendant's position. On one hand, defendant claims that release of the requested material will result in the premature disclosure of proposed policies because the public will be correct in the inferences it draws from disclosure of the requested information. On the other hand, defendant simultaneously claims that release of the material will result in public confusion because the public might be in-

correct in the inferences it draws from the same information. The glaring inconsistency of this position seems more to prove, than discount, plaintiffs' position that inferences in fact cannot reliably be made from the requested information. The simple request for the *status* of a pending regulation does not implicate *what is* or *is not* being recommended.

Nor is the information that *a* recommendation has been made by one agency to another sufficiently "deliberative" to trigger the protections of the privilege. On the basis solely of this information, no particular policy or rationale could be attributed to any agency or official such that the consultative and predecisional functions of government officials might be discouraged or chilled. Nor would the public be confused by mere disclosure that executive agencies are complying with established rulemaking procedures. Such is hardly a secret to be kept from the public. At most, disclosure of such limited information as plaintiffs are seeking might allow plaintiffs to ascribe responsibility for delay to a particular agency. Nevertheless, as the parties have stipulated, the regulatory process is a fluid one and even this inference may not be reliable. Moreover, the length of time an agency uses to review a proposal is not itself substantive information and does not give rise to reliable indications or inferences as to any underlying advice, opinions, or recommendations in support of the regulation.

### The Reach of the Deliberative Process Privilege

Defendant, as a last resort, also contends that even if the requested information is factual, the factual details of particular, ongoing, decisionmaking processes are as protected by the deliberative process privilege as the recommendations or underlying advice themselves. In support of this argument defendant cites a series of cases, which it admits are factually inapposite, but which purport to set forth the principle that the deliberative process privilege protects not simply deliberative material, but also the outside contours of the deliberative *process* itself. Defendant argues that this principle should be extended to encompass the information requested in the instant case because disclosure would interfere with the integrity of the decisionmaking process by inviting lobbying and placing pressure on government officials to resolve matters with expedition and dispatch. This, of course, is entire speculation.

In addition, the majority of decisions relied on by defendant, aside from not being on point, fall within a well-recognized, but narrow, exception to the general rule that facts in deliberative documents must be disclosed: that is, facts will be protected by Exemption 5 when they are selected or summarized in such a way that they reflect a deliberative process. Illustrative of this exception is the D.C. Circuit's decision in *Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C.Cir.1974). In that case, the court held that a staff-prepared summary of factual evidence on the record in an administrative hearing was exempt under the deliberative process privilege because disclosure would reveal the aides' evaluation and analysis of the facts. *Id.* at 68. No comparable selection process is implicated by disclosure in the instant case. At most it could be said the information would reveal what regulatory subjects FDA, HHS, and OMB have *chosen* to address amongst each other out of a larger field of regulatory proposals before the FDA. Exposing this choice, however, certainly does not compromise the decisionmaking process any more than disclosure by the FDA itself under the President's own directive of the regulatory subjects it has chosen in the first instance to consider.

Defendant, for reasons that are apparent, contends that the principles of this exception should not be limited to the facts of the cited cases. Defendant's position would allow the exception to swallow the rule. Moreover, the very premise of de-

fendant's claim is that disclosure in the instant case would compromise the decisionmaking process, which we reject. Defendant is grasping for straws when it asserts that the essence of the deliberative process privilege is to protect public officials from lobbyists while they deliberate on public policy. Unlike the analogy drawn by defendant to the decisionmaking process of an appellate panel,[1] the regulatory process is not a "private" one, nor did Congress intend for Exemption 5 to so make it. Rather, the far more limited essence of the privilege is to protect agencies' predecisional policy discussions from public scrutiny. As we have discussed, no such policy discussions would be compromised by disclosure in this case.

### CONCLUSION

We are guided in our decision by the Supreme Court's understanding of Congress' intent that Exemption 5 be construed "as narrowly as consistent with efficient Government operation." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 87, 93 S.Ct. 827, 836, 35 L.Ed.2d 119 (1973). For the reasons discussed above, we accordingly hold that the information requested by plaintiffs is not exempt from disclosure under Exemption 5 of the FOIA.

An order consistent with the foregoing has been entered this day.

---

**1.** This analogy is as surprising as it is far-fetched. This is because the federal judiciary, including appellate panels, are not subject to the Freedom of Information Act. 5 U.S.C. §§ 551, 552(a).