# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued October 9, 2018        Decided January 25, 2019

No. 18-5017

JUDICIAL WATCH, INC.,
APPELLANT

v.

UNITED STATES DEPARTMENT OF DEFENSE AND CENTRAL
INTELLIGENCE AGENCY,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-00360)

*Lauren M. Burke* argued the cause and filed the briefs for appellant. *Paul J. Orfanedes* entered an appearance.

*Samantha L. Chaifetz*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief was *Mark B. Stern*, Attorney.

Before: ROGERS and SRINIVASAN, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

Opinion for the court filed by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Judicial Watch unsuccessfully requested, pursuant to the Freedom of Information Act ("FOIA"), release of five memoranda that memorialized advice to the President and his top national security advisers when the President was considering whether to order a military strike on Osama bin Laden's compound in Pakistan. On appeal, Judicial Watch challenges the government agencies' invocation of FOIA Exemptions 1, 3, and 5 as allowing the government to operate under secret legal principles when "[t]he purpose of FOIA is to shield the government from operating secretly under the guise of legality." Appellant's Br. 7. For the following reasons, we hold that the memoranda responsive to Judicial Watch's FOIA request are protected from disclosure under the presidential communications privilege in Exemption 5 and affirm.

## I.

FOIA is a major breakthrough in providing government transparency, *see EPA v. Mink*, 410 U.S. 73, 79 (1973), "set[ting] forth a policy of broad disclosure of Government documents in order 'to ensure an informed citizenry, vital to the functioning of a democratic society,'" *FBI v. Abramson*, 456 U.S. 615, 621 (1982) (citations omitted). Congress determined, however, that "legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *Id.* The agencies invoked Exemptions 1, 3, and 5 in denying Judicial Watch's disclosure request.

Exemption 1 permits agencies to withhold materials "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and properly classified pursuant to

such an Executive order. 5 U.S.C. § 552(b)(1). Executive Order No. 13,526 allows agencies to classify material pertaining to specified categories as falling within Exemption 1 if "unauthorized disclosure could reasonably be expected to cause identifiable or describable damage to the national security." Exec. Order No. 13,526, § 1.4, 75 Fed. Reg. 707, 709 (Dec. 29, 2009). Exemption 3 permits the withholding of material "specifically exempted from disclosure by statute" that "establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(ii). Section 102A(i)(1) of the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), authorizes the withholding of materials relating to "intelligence sources and methods." 50 U.S.C. § 403(d)(3); *Larson v. Dep't of State*, 565 F.3d 857, 865 (D.C. Cir. 2009); *see also CIA v. Sims*, 471 U.S. 159, 167 (1985). Exemption 5 protects "inter-agency or intra-agency memorandums . . . that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5); *see NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975). It covers the presidential communications privilege, the deliberative process privilege, and the attorney-client privilege. *See Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008). In accord with the congressional commitment to transparency, FOIA exemptions are to be "narrowly construed," yet not denied "meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

In December 2015, Judicial Watch requested the Department of Defense and the Central Intelligence Agency ("CIA") disclose information related to memoranda regarding the capture or killing of Osama bin Laden in 2011. Earlier, after the raid on Osama bin Laden's compound in Pakistan had been successfully completed, the General Counsel of the CIA stated in prepared remarks at Harvard Law School that "[b]y

the time the force was launched, the U.S. Government had determined with confidence that . . . the operation would be conducted in complete accordance with applicable U.S. and international legal restrictions and principles." Stephen W. Preston, Remarks at Harvard Law School (Apr. 10, 2012), https://www.cia.gov/news-information/speeches-testimony/2012-speeches-testimony/cia-general-counsel-harvard.html (Apr. 20, 2012) (quoted in Decl. of Antoinette B. Shiner, Info. Rev. Off'r for the Litig'n. Info. Rev. Off., CIA ("Shiner Decl.") ¶ 7 (Aug. 16, 2016)). Ultimately, Judicial Watch refined its requests to five memoranda:

- A memorandum written by Pentagon General Counsel Jeh C. Johnson concerning any violation of Pakistani sovereignty in seeking, capturing, and/or killing Osama bin Laden in 2011.

- A memorandum written by CIA General Counsel Stephen W. Preston regarding when the administration must alert congressional leaders about the raid, capture, and/or killing of Osama bin Laden in 2011.

- A memorandum written by National Security Council Legal Adviser Mary B. DeRosa concerning a Navy SEAL team going into a raid with the intention of killing as a default option during the search, raid, capture and/or killing of Osama bin Laden in 2011.

- A memorandum written by National Security Council Legal Adviser Mary B. DeRosa regarding plans for detaining Osama bin Laden in the event of his capture.

- A memorandum written by Joint Chiefs of Staff Legal Adviser Rear Admiral James W. Crawford III regarding options and/or plans for Osama bin Laden's burial.

After Judicial Watch filed suit in February 2016, the agencies moved for summary judgment, arguing the five memoranda were protected in full under the presidential communications privilege in Exemption 5 because they contained confidential analyses and recommendations that were solicited by, and communicated to, the President and his closest national security advisers. Further, because the memoranda related to certain courses of action being contemplated by the President, they argued the memoranda were also protected by the deliberative process and the attorney-client privileges in Exemption 5. And because the memoranda contained classified information and information protected by the National Security Act, the agencies argued that their disclosure could reasonably be expected to harm national security and therefore were protected under Exemptions 1 and 3. The agencies stated that a line-by-line review of the memoranda indicated no reasonably segregable, non-exempt portions could be publicly released.

Sworn declarations accompanying the summary judgment motion explained that "[b]ecause the risks and the potential consequences associated with conducting a raid . . . were substantial, the President and his national security team considered a number of variables and carefully weighed different options for the operation." Shiner Decl. ¶ 7. "Top national security lawyers from the CIA, Department of Defense, and the National Security Council formed an integral part of that decision-making process." *Id.* Their advice "served as one consideration, among others, weighed by the President and his national security advis[e]rs in advance of the President's decision to authorize the raid on bin Laden's compound." *Id.* ¶ 8. That advice was "memorialize[d]" in five written memoranda. *Id.* ¶ 7. Although certain details of the raid have been made public, the parties to this legal advice have

maintained the confidentiality of these communications. *See id.* ¶ 8; Decl. of Mark H. Herrington, Assoc. Dep. Gen. Counsel, Dep't of Def. ("Herrington Decl.") ¶ 8 (Aug. 17, 2016).

The district court granted the motion for summary judgment, ruling the five memoranda were protected from disclosure under Exemptions 1, 3, and 5. *Judicial Watch, Inc. v. Dep't of Defense*, 245 F. Supp. 3d 19 (D.D.C. 2017). It denied Judicial Watch's motion to alter or amend the judgment after the government clarified that its declarations did not address when the memoranda were prepared, ruling that the presidential communications privilege protected the memoranda from disclosure regardless of whether the written memoranda were created before or after briefing.

Judicial Watch appeals. Our review of the grant of summary judgment is *de novo*, *see Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007), and our review of denial of the motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) is for abuse of discretion, *Ciralsky v. CIA*, 355 F.3d 661, 671 (D.C. Cir. 2004).

## II.

The Supreme Court has long recognized that "[a] President and those who assist him must be free to explore alternatives in the process of shaping policies and making decisions and to do so in a way many would be unwilling to express except privately." *United States v. Nixon*, 418 U.S. 683, 708 (1974) (*Nixon I*). The Court has conceived of the presidential communications privilege as "fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution" because it "relates to the effective discharge of a President's powers[.]" *Id.* at 708, 711.

The privilege protects "the public interest in candid, objective, and even blunt or harsh opinions in Presidential decisionmaking." *Id.* at 708. The Court concluded these considerations "justify[] a presumptive privilege for Presidential communications." *Id.* The scope of the presidential communications privilege is thus defined in terms of communications that involve the Office of the President, the exercise of the President's responsibilities, and confidential presidential decisionmaking. *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 449 (1977) (*Nixon II*). The Supreme Court has reaffirmed that the President's ability to obtain frank and informed opinions from his senior advisers is vital to the President's effective conduct of his duties. *Id.* at 448–49.

Bridging the gap since the *Nixon* cases, this court examined the history and scope of the privilege in *In re Sealed Case*, 121 F.3d 729, 744 (D.C. Cir. 1997). The court concluded that the presidential communications privilege is properly invoked with respect to "documents or other materials that reflect presidential decisionmaking and deliberations and that the President believes should remain confidential." *Id.* Regarding its breadth, the court observed that the privilege "is rooted in the need for confidentiality to ensure that presidential decisionmaking is of the highest caliber," *id.* at 750, and yet must "be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected," *id.* at 752. To "best serve[]" the public interest, the court held that the privilege covered "communications made by presidential advisers in the course of preparing advice for the President . . . even when these communications are not made directly to the President." *Id.* at 751–52. "Given the need to provide sufficient elbow room for advisers to obtain information from all knowledgeable sources," the privilege must extend beyond communications made directly to the President to include communications

solicited and received by the President's "immediate White House advisers" or even certain members of their staffs, but "should not extend to staff outside the White House in executive branch agencies." *Id.* at 752. Once the privilege applies, the entirety of the document is protected. *See id.* at 745.

The court further elaborated on the scope of the privilege when Judicial Watch requested documents from the Office of the Pardon Attorney and the Office of the Deputy Attorney General relating to pardon grants and applications considered by the President. *See Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1110 & n.2 (D.C. Cir. 2004). Relying on *Nixon I* and *II* and the principles in *In re Sealed Case*, the court held that the privilege protected from disclosure pardon documents "solicited and received" by the President or his immediate White House advisers but not "all agency documents prepared in the course of developing the Deputy Attorney General's pardon recommendations for the President." *Id.* at 1114. In declining to extend the reach of the privilege, the court explained that the same confidentiality and candor concerns calling for application of the president communications privilege "do not apply as forcefully," *id.* at 1115, in view of the stages of intermediate review of staff pardon recommendations, some of which never reach the President.

Here, the extraordinary decision confronting the President in considering whether to order a military strike on Osama bin Laden's compound in Pakistan cries out for confidentiality, and the district court's application of the presidential communications privilege rested on consideration of the appropriate factors, *see Judicial Watch*, 245 F. Supp. 3d at 28–30. The decision required the exercise of an informed judgment by the President as Commander in Chief, U.S. CONST. art. 2, § 2, on a highly sensitive subject with serious

direct and collateral consequences for foreign relations that required a high degree of protection for "the President's confidentiality and the candor of his immediate White House advisers," *Judicial Watch*, 365 F.3d at 1123. Declarations filed with the motion for summary judgment explained that the President and his immediate advisers solicited and received the advice of the top national security lawyers from the Department of Defense, CIA, and National Security Council relating to a potential military counterterrorism operation. *See, e.g.*, Shiner Decl. ¶¶ 7–8. The legal advice memorialized in each memorandum concerned that covert military operation and was shared only with the President and his closest advisers. *Id.* The non-disclosure of that advice thereby protects "the President's ability to obtain frank and informed opinions from his senior advis[e]rs," an "acute [concern] in the national security context, particularly in situations . . . where the President is formulating a decision on a sensitive operation with substantial foreign policy impacts." *Id.* ¶ 9; *see* Herrington Decl. ¶ 7. Although the presidential communications privilege is a qualified privilege, subject to an adequate showing of need, FOIA requests cannot overcome the privilege because "the particular purpose for which a FOIA plaintiff seeks information is not relevant in determining whether FOIA requires disclosure," *Loving*, 550 F.3d at 40 (quoting *In re Sealed Case*, 121 F.3d at 737 n.5).

Judicial Watch does not contest the government's statement that "the memoranda memorialize legal advice that was briefed to the President and his closest advis[e]rs." Shiner Decl. ¶ 8. Neither does it suggest the presidential communications privilege is inapplicable where there is a "need to protect military, diplomatic, or sensitive national security secrets," *Nixon II*, 433 U.S. at 447 (internal quotation marks and citation omitted). Instead Judicial Watch points out that it neither asked the government to disclose whether the

memoranda or their contents were communicated to the President or his senior advisers, nor for any presidential deliberations or deliberative materials, and "asked only that the memoranda be produced." Appellant's Br. 8. Further, Judicial Watch observes, the government makes no claim that the authors of the memoranda briefed the President or his senior advisers directly, or even that they were the intended recipients of the memoranda or reviewed the memoranda. Judicial Watch understands the government only to claim that the memoranda "memorialize" the analysis and advice briefed, thereby implying they were prepared after the briefing. This is significant, Judicial Watch maintains, because of lingering "unanswered questions," Appellant's Br. 10. The district court's response to the government's notice of clarification left unknown when the briefing took place in relation to preparation of the memoranda, who gave the briefing, and how the briefers obtained the analysis and the advice they conveyed to the President and his senior advisers. As a result, Judicial Watch concludes, the district court failed to construe the presidential privilege narrowly. "[A]llow[ing] the President and Executive Branch to justify its actions without public oversight . . . would allow [them] to engage in governance by 'secret law.'" *Id.* (citation omitted).

Judicial Watch makes no effort to reconcile its position that the timing of the preparation of the memoranda defeats application of the presidential communications privilege with this court's precedent. In *In re Sealed Case*, 121 F.3d at 758, the court held that notes taken to memorialize meetings and telephone calls involving top White House advisers about the investigation of the former Secretary of Agriculture were protected from disclosure by the presidential communications privilege because the notes reflected those advisers' communications. In *Loving*, the court held that the privilege applies to "documents reflecting presidential decisionmaking

and deliberations, regardless of whether the documents are predecisional or not." 550 F.3d at 37 (internal quotation marks and citation omitted).

That Judicial Watch claims only to seek the memoranda and not presidential deliberations or deliberative materials similarly ignores precedent. The district court properly relied on the government's declarations, *see Larkin v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009), that the requested records reflected the President's decisionmaking with regard to the military strike. *Judicial Watch*, 245 F. Supp. 3d at 28–29; *see* Shiner Decl. ¶¶ 9–10; Herrington Decl. ¶¶ 6–8. The memoranda Judicial Watch seeks are "documents . . . that reflect presidential . . . deliberations and that the President believes should remain confidential." *Judicial Watch*, 365 F.3d at 1113 (quoting *In re Sealed Case*, 121 F.3d at 744). Disclosure of the memoranda would reveal the President's deliberations. *See In re Sealed Case*, 121 F.3d at 744.

Judicial Watch's suggestion that "unanswered questions," Appellant's Br. 10, preclude application of the presidential communications privilege fails for similar reasons. There is no basis on this record to conclude that application of the privilege is contrary to the limitations identified in our precedent. *See Judicial Watch*, 365 F.3d at 1115; *In re Sealed Case*, 121 F.3d at 752. In *In re Sealed Case*, the court held that notes of meetings among White House advisers and drafts of press briefings were protected from disclosure by the privilege, even though it was undisputed that the President never saw these documents, *id.* at 746–47. Nothing in the court's analysis implied that additional information would be required about who took the notes or how the discussions at the meetings were ultimately communicated to the President. Similarly, here, to determine the applicability of the presidential communications privilege, the government's declarations did not need to be

more specific about who gave the briefings or how those conducting the briefings obtained the analysis and advice they conveyed, or the relationship of the briefer to the authors, the President, and the President's senior advisers, or whether and how the results of the briefings were later conveyed to the authors of the memoranda. Even assuming such information would not be privileged, Judicial Watch fails to show why it would be needed to determine the applicability of the presidential communications privilege. It sufficed that the President and his top national security advisers "solicited and received," *Judicial Watch*, 365 F.3d at 1114, the legal advice memorialized in the five memoranda sought by Judicial Watch.

Finally, Judicial Watch contends that application of the presidential communications privilege "would allow the President and Executive Branch to engage in governance by 'secret law.'" Appellant's Br. 10 (citation omitted). The "secret law" doctrine is typically applicable to "opinions and interpretations which embody the agency's effective law and policy," *Sears, Roebuck & Co.*, 421 U.S. at 153 (internal quotation marks and citation omitted); *see Afshar v. Dep't of State*, 702 F.2d 1125, 1139–41 (D.C. Cir. 1983). The materials Judicial Watch seeks do not constitute or establish "law" in the sense of setting forth a decision that binds subordinates or a regulated party. Rather, the materials document advice given up the chain to someone (the President) who then made a decision. The government's declaration explains that the advice contained in the memoranda was not an "authorization to conduct a given activity, but, rather, one step in the Executive branch deliberations." Shiner Decl. ¶ 9. Although there may be some overlap between the presidential communications and deliberative process privileges under Exemption 5, *see Judicial Watch*, 365 F.3d at 1114–15, to the extent this "secret law" argument echoes Judicial Watch's

arguments against applying the deliberative process privilege, *see* Appellant's Br. 17–19, the court has no need to address it.

Accordingly, because the presidential communications privilege applies to the totality of the five memoranda that Judicial Watch requests, and the question of segregability of non-exempt material is therefore not presented, we affirm the grant of summary judgment and the denial of the motion to alter or amend the judgment.