# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 26, 2013       Decided January 3, 2014

No. 12-5363

ELECTRONIC FRONTIER FOUNDATION,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE,
APPELLEE

Appeal from the United States District Court
for the District of Columbia
(No. 1:11-cv-00939)

*Mark Rumold* argued the cause for appellant. With him on the briefs was *David L. Sobel*.

*Melanie Sloan* and *Anne L. Weismann* were on the brief for *amici curiae* Citizens for Responsibility and Ethics in Washington, et al. in support of appellant.

*Daniel Tenny*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Stuart F. Delery*, Acting Assistant Attorney General, *Ronald C. Machen Jr.*, U.S. Attorney, and *Michael S. Raab*, Attorney, U.S. Department of Justice.

Before: SRINIVASAN, *Circuit Judge*, and EDWARDS and SENTELLE, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: Electronic Frontier Foundation ("EFF") appeals the District Court's denial of its request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, for disclosure of a legal opinion (the "OLC Opinion") prepared for the Federal Bureau of Investigation (the "FBI") by the Office of Legal Counsel ("OLC") in the Department of Justice. *Elec. Frontier Found. v. Dep't of Justice*, 892 F. Supp. 2d 95 (D.D.C. 2012). The District Court held that the OLC Opinion, in its entirety, is exempt from FOIA disclosure for two reasons. First, the District Court held that the OLC Opinion is covered by the "deliberative process privilege" in FOIA Exemption 5, which "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975)); 5 U.S.C. § 552(b)(5). Second, the District Court concluded that portions of the OLC Opinion are exempt from disclosure under FOIA Exemption 1 because they are "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" and "are in fact properly classified pursuant to such Executive order." *Elec. Frontier Found.*, 982 F. Supp. 2d at 91-101 (citing 5 U.S.C. § 552(b)(1)).

EFF contests the District Court's holding that the OLC Opinion is covered by the deliberative process privilege. Br. of Appellant at 19-34. EFF argues further that, even if the OLC Opinion might have been covered by the deliberative process

privilege, the FBI waived the privilege by relying on the OLC Opinion in dealings with Congress and the Office of the Inspector General (the "OIG"). *Id.* at 34-37. Finally, EFF claims that the District Court erred in failing to require the agency "to specify in detail which portions of the document are disclosable and which are allegedly exempt" under Exemption 1. *Id.* at 46 (quoting *Kimberlin v. Dep't of Justice*, 139 F.3d 944, 950 (D.C. Cir. 1998)), and that it also "erred by failing to determine whether there was unclassified, factual information . . . that was 'reasonably segregable' from the [OLC] Opinion's other content." *Id.* at 50 (quoting 5 U.S.C. § 552(b)).

On the record before us, we hold that the OLC Opinion, which was requested by the FBI in response to the OIG's investigation into its information-gathering techniques, is an "advisory opinion[], recommendation[] and deliberation[] comprising part of a process by which governmental decisions and policies are formulated," and is therefore covered by the deliberative process privilege. *Klamath Water Users*, 532 U.S. at 8 (quotation omitted). We also hold that the FBI did not "adopt" the OLC Opinion and thereby waive the deliberative process privilege. The OIG mentioned the OLC Opinion in its report, and a congressional committee inquired about the OLC Opinion, but the FBI never itself adopted the OLC Opinion's reasoning as *its* own. Finally, because the entire OLC Opinion is exempt from disclosure under the deliberative process privilege, we need not decide whether particular sections were properly withheld as classified, or whether some material is reasonably segregable from the material properly withheld.

## I.  BACKGROUND

### A.  *Statutory Framework*

FOIA requires government agencies to make available "final opinions . . . as well as orders," "statements of policy and

interpretations which have been adopted by the agency," and "administrative staff manuals and instructions . . . that affect a member of the public." 5 U.S.C. § 552(a)(2). FOIA exemptions allow agencies to withhold information from disclosure if it has been properly classified under criteria established by Executive order "to be kept secret in the interest of national defense or foreign policy," *id.* § 552(b)(1) (Exemption 1), and "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency," *id.* § 552(b)(5) (Exemption 5). Exemption 5 covers material that would be protected from disclosure in litigation under one of the recognized evidentiary or discovery privileges, such as the attorney-client privilege. *Pub. Citizen, Inc. v. Office of Mgmt. & Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (citing *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 862 (D.C. Cir. 1980)). The deliberative process privilege is one of the litigation privileges incorporated into Exemption 5. It allows an agency to withhold "all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears*, 421 U.S. at 153 (quotations omitted).

## B.   *Procedural History*

Several statutes permit the FBI to use "national security letters" to subpoena telephone and financial records that it certifies are connected to an authorized national security investigation. *See* Br. for Appellee at 4 (citing 12 U.S.C. § 3414(a)(5)(A); 18 U.S.C. § 2709; 15 U.S.C. § 1681u(a)-(b); 50 U.S.C. § 436(a)(1) (transferred to 50 U.S.C. § 3162)). The USA Patriot Improvement and Reauthorization Act of 2005 directed the OIG to audit the "effectiveness and use, including any improper or illegal use," of these national security letters. Pub. L. No. 109-177, § 119, 120 Stat. 192 (2006). The OIG's initial report found that the FBI had issued "exigent letters" to request records from telephone companies in cases in which

FBI officials had not certified that the records were part of an authorized national security investigation, as required for a bona fide national security letter. U.S. DEP'T OF JUSTICE, OFFICE OF THE INSPECTOR GENERAL, A REVIEW OF THE FEDERAL BUREAU OF INVESTIGATION'S USE OF NATIONAL SECURITY LETTERS 92 (March 2007), http://www.justice.gov/oig/special/s0703b/final.pdf.

Following these findings, the OIG conducted a second investigation into the FBI's use of exigent letters for requesting telephone records. DEP'T OF JUSTICE, OFFICE OF THE INSPECTOR GENERAL, A REVIEW OF THE FEDERAL BUREAU OF INVESTIGATION'S USE OF EXIGENT LETTERS AND OTHER INFORMAL REQUESTS FOR TELEPHONE RECORDS (January 2010) ("OIG Report"), www.justice.gov/oig/special/s1001r.pdf, *reprinted in part in* Joint Appendix ("J.A.") 46. The OIG provided the FBI with a draft of this report. Valerie Caproni, General Counsel of the FBI, then sought legal advice from OLC about the investigative tactics at issue. Decl. of Paul P. Colborn, Special Counsel in the Office of Legal Counsel at 4-5, *reprinted in* J.A. 21-22 ("Colborn Decl.").

The OIG Report, which has been publicly disclosed, explains that:

> [A]fter reviewing a draft of the OIG report the FBI asked the Office of Legal Counsel (OLC) for a legal opinion on this issue. . . . [T]he OLC agreed with the FBI that under certain circumstances [redacted authority] allows the FBI to ask for and obtain these records on a voluntary basis from the providers, without legal process or a qualifying emergency. . . . [T]he FBI acknowledged in its July 2009 comments to a draft of this report that it had never considered or relied upon [redacted authority] when it obtained any of the telephone records at issue in this report. Moreover it cannot be known at this point whether

any provider would have divulged such records based on [redacted authority] alone, and without the FBI's representation that a[] [national security letter] or other compulsory legal process would be served.

OIG Report at 264-65, *reprinted in* J.A. 48-49. The OIG Report concluded that "the potential use of [redacted authority] by the FBI has important policy implications" and "creates a significant gap in FBI accountability and oversight that should be examined closely by the FBI, the Department, and Congress." *Id.* at 268, *reprinted in* J.A. 52. However, the OIG Report also acknowledged that "[t]he FBI has stated that it does not intend to rely on [redacted authority]." *Id.* at 265 n.283, *reprinted in* J.A. 49.

On April 14, 2010, the House Subcommittee on the Constitution, Civil Rights, and Civil Liberties held a hearing concerning the OIG Report. As relevant to the OLC Opinion, FBI General Counsel Caproni testified:

The OIG's 2010 report discusses a January 8, 2010 opinion issued by [OLC], which concluded that [the Electronic Communications Privacy Act] does not forbid electronic communications service providers, in certain circumstances, from disclosing certain call detail records to the FBI on a voluntary basis without legal process or a qualifying emergency. Many members of Congress have asked questions about this OLC opinion, which is classified. It is my understanding that it has been shared with our oversight committees, including this Committee, at the appropriate security level. Because of the classified nature of the OLC opinion, I cannot address it in this forum, but am available to discuss it in a secure setting. I can, however, state that the OLC opinion did not in any way factor into the FBI's flawed practice of using exigent letters between 2003 and 2006 nor did it affect in any way the records-retention decisions made by the FBI as part of

the reconciliation project discussed above.

*The Report of the Dep't of Justice, OIG, Concerning the FBI's use of Exigent Letters and Other Informal Requests for Telephone Records: Hearing Before the Subcomm. on the Constitution of the H. Comm. on the Judiciary*, 111th Cong. (April 14, 2010) at 10, *reprinted in* J.A. 60, 70 (Statement of Valerie E. Caproni, General Counsel, FBI) ("Caproni Testimony").

On February 15, 2011, EFF submitted a FOIA request for the OLC Opinion. Relying on FOIA Exemptions 1 and 5, the Department of Justice denied EFF's request because the OLC Opinion contains classified information and is covered by the deliberative process privilege. Letter from Paul P. Colborn, Special Counsel in OLC, to David L. Sobel (Feb. 25, 2011), *reprinted in* J.A. 30. EFF filed suit in District Court seeking disclosure of the OLC Opinion. The Department of Justice submitted two affidavits in support of its motion for summary judgment: Paul Colborn, Special Counsel in OLC, declared that the OLC Opinion is "pre-decisional and deliberative" in nature, and "disclosure . . . would undermine the deliberative processes of the government and chill the candid and frank communications necessary for effective decision-making." Colborn Decl. at 6, *reprinted in* J.A. 23. Colborn further declared that the OLC Opinion is also exempt from disclosure insofar as it contains "content derived from confidential and classified communications made by the FBI to OLC." *Id.* at 5, *reprinted in* J.A. 22.

David Hardy, Section Chief of the Record/Information Dissemination Section, Records Management Division, of the FBI, declared that portions of the OLC Opinion were properly classified because "unauthorized disclosure of this information 'reasonably could be expected to cause serious damage to the national security.'" Corrected Decl. of David M. Hardy at 5, *reprinted in* J.A. 33-44, 37 (quoting Exec. Order No. 13,526,

Classified National Security Information, § 1.1(a), 75 Fed. Reg. 707 (Dec. 29, 2009)). Hardy explained that the information contained in the OLC Opinion is "highly specific in nature and known to very few individuals," it describes intelligence gathering techniques that the FBI presently uses, and disclosure "would allow hostile entities to discover the current methods and activities used and . . . then develop countermeasures which could severely disrupt the FBI's intelligence-gathering capabilities." *Id.* at 9, *reprinted in* J.A. 41.

The District Court concluded that the OLC Opinion is covered by the deliberative process privilege because it "contains inter-agency material that was generated as a continuous process of agency decision-making, namely how to respond to the OIG's critique of the FBI's information-gathering methods." 892 F. Supp. 2d at 103. The District Court declined to rule on whether attorney-client privilege also exempts the OLC Opinion from disclosure because the deliberative process privilege applies to all portions of the document that would be subject to the attorney-client privilege. *Id.* The District Court noted that the Department of Justice is "asserting Exemption 1 only as to certain paragraphs of the OLC Opinion which have been marked as classified in accordance with the classification markings included in the FBI's two letters to OLC requesting legal advice," and it found the Department of Justice's declarations sufficiently specific "to identify the records referenced and understand the basic reasoning behind the claimed exemptions." *Id.* at 101 (quoting *Morley v. CIA*, 508 F.3d 1108, 1123 (D.C. Cir. 2007)). The District Court concluded that "no portion of the OLC Opinion is reasonably segregable and releasable" because "the entirety of the OLC Opinion was withheld under Exemption 5, leaving nothing significant that could be disclosed in redacted format." *Id.* at 104.

## II.    ANALYSIS

### A.    *Standard of Review*

We review decisions granting summary judgment in FOIA cases *de novo*. *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1111-12 (D.C. Cir. 2007). The agency bears the burden of showing that a claimed exemption applies. *Pub. Citizen,* 598 F.3d at 869 (citing *Loving v. Dep't of Def.,* 550 F.3d 32, 37 (D.C. Cir. 2008)). Summary judgment is warranted when the agency's affidavits "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984) (quotations omitted); *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." (quotations omitted)).

### B.    *Deliberative Process Privilege*

The deliberative process privilege protects agencies from being "forced to operate in a fishbowl." *EPA v. Mink*, 410 U.S. 73, 87 (1973) (quotations omitted). And it applies when "production of the contested document would be injurious to the consultative functions of government that the privilege of nondisclosure protects." *Id.* (quotations omitted). The privilege "calls for disclosure of all opinions and interpretations which embody the agency's effective law and policy, and the withholding of all papers which reflect the agency's group thinking in the process of working out its policy and determining what its law shall be." *Sears,* 421 U.S. at 153 (quotations omitted). The privilege is limited to documents that are "predecisional" and "deliberative," meaning "they 'reflect[] advisory opinions, recommendations, and

deliberations comprising part of a process by which governmental decisions and policies are formulated, [or] the personal opinions of the writer prior to the agency's adoption of a policy.'" *Pub. Citizen,* 598 F.3d at 875 (quoting *Taxation With Representation Fund v. IRS*, 646 F.2d 666, 677 (D.C. Cir. 1981)).

Importantly, the Supreme Court's decision in *Sears* explained that, under FOIA, agencies must disclose their "working law," i.e. the "reasons which [supplied] the basis for an agency policy actually adopted." 421 U.S. at 152-53. In other words, an agency is not permitted to develop "a body of 'secret law,' used by it in the discharge of its regulatory duties and in its dealings with the public, but hidden behind a veil of privilege because it is not designated as 'formal,' 'binding,' or 'final.'" *Schlefer v. United States*, 702 F.2d 233, 244 (D.C. Cir. 1983) (quoting *Coastal States*, 617 F.2d at 867). Therefore, an agency must disclose "binding agency opinions and interpretations" that the agency "actually applies in cases before it." *Id.* (quoting *Sterling Drug Inc. v. FTC*, 450 F.2d 698, 708 (D.C. Cir. 1971)).

In *Sterling Drug,* we required disclosure of memoranda prepared by the Federal Trade Commission to the extent that they contained "orders and interpretations" that the Commission actually applied in a particular acquisition case. 450 F.2d at 708. We explained that the deliberative process privilege's policy "of promoting the free flow of ideas within the agency does not apply here, for private transmittals of binding agency opinions and interpretations should not be encouraged." *Id.* In *Coastal States*, we followed this principle to hold that memoranda from regional counsel to auditors in field offices must be disclosed because the memoranda "represent[ed] interpretations of established policy on which the agency relies in discharging its regulatory responsibilities." 617 F.2d at 869. Such interpretations "are not the ideas and theories which go into the making of the law, they are the law

itself, and as such should be made available to the public." *Id.* at 868 (quoting *Sterling Drug*, 450 F.2d at 708); *accord Schlefer*, 702 F.2d at 244 (holding that the privilege does not extend to opinions of the Chief Counsel of the Maritime Administration interpreting statutes the agency administers because they "are authoritative Agency decisions in the cases to which they are addressed and . . . also guide subsequent Agency rulings").

The same principle applied in *Tax Analysts v. IRS,* 117 F.3d 607 (D.C. Cir. 1997) *(Tax Analysts I)*, where we held that the privilege did not cover advice memoranda from the Office of the Chief Counsel to field personnel providing legal guidance with respect to the situations of specific tax payers. *Id.* at 609, 618. We explained that the "structure and purposes" of the system of issuing advisory memoranda to field personnel "reveal that the national office, in issuing these memoranda, is attempting to develop a body of coherent, consistent interpretations of federal tax laws nationwide." *Id.* at 617. Hence, even though the memoranda are "nominally non-binding," they are "considered statements of the agency's legal position." *Id.* Reaching the same conclusion with respect to similar advice memoranda in *Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002) *(Tax Analysts II)*, we noted that the memoranda used language such as "[i]t is the position of the Treasury Department that . . ." and "[w]e conclude." *Id.* at 81. We explained that the "tone of these [memoranda] indicates that they 'simply explain and apply established policy.'" *Id.* (quoting *Coastal States*, 617 F.2d at 869).

In *Public Citizen*, we found that the deliberative process privilege did not cover Office of Management and Budget ("OMB") memoranda describing which agencies were permitted, by statute or by prior OMB practice, to submit their budgetary materials to Congress without first clearing them with OMB. 598 F.3d at 868. We found that these documents "determine OMB's interaction with outsiders" and had

"real-world effects on the behavior of . . . agencies," *id.* at 872; the documents thus "reflect[ed] OMB's formal or informal policy" and "fit comfortably within the working law framework," *id.* at 875.

None of the foregoing authorities is dispositive here, however, because OLC did not have the authority to establish the "working law" of the FBI. OLC therefore did not "explain and apply established policy." *Tax Analysts II*, 294 F.3d at 81 (quoting *Coastal States*, 617 F.2d at 869). The OLC Opinion instead amounts to advice offered by OLC for consideration by officials of the FBI. Such a memorandum is not the law of an agency unless the agency adopts it. *See* Part C. *infra*.

The authorities that control the disposition of this case are the decisions holding that the deliberative process privilege *does* cover legal memoranda that concern the *advisability* of a particular policy, but do not authoritatively state or determine the agency's policy. For example, we have held exempt from disclosure memoranda containing legal advice from the Legal Adviser to the Secretary of State "concerning United States policy on issues involving" affairs in the Middle East. *Brinton v. Dep't of State*, 636 F.2d 600, 602 (D.C. Cir. 1980). The court explained that "[t]here can be no doubt that such legal advice, given in the form of intra-agency memoranda prior to any agency decision on the issues involved, fits exactly within the deliberative process rationale for Exemption 5." *Id.* at 604. The Legal Adviser's "role is to give advice to those in the State Department who do make the policy decisions," and, thus, the "flow of advisory material is exactly opposite of the paradigm of 'final opinions,' which typically flow from a superior with policy-making authority to a subordinate who carries out the policy." *Id.* at 605 (citation omitted). In *Murphy v. Dep't of Army*, 613 F.2d 1151, 1154 (1979), this court held that the privilege covers a memorandum from the Army General Counsel to Assistant Secretary providing advice on whether to enter a contract, because "[t]he Assistant Secretary *who had*

*decision-making power* . . . sought *advice* from the general counsel . . . on the legal questions raised." (citations omitted) (emphasis added).

EFF argues that the OLC Opinion constituted the "working law" of the FBI because it "constituted 'guidance' used by [the agency] in [its] dealings with the public." Br. of Appellant at 29 (quoting *Coastal States*, 617 F.2d at 869). The Government counters that the FBI's "[c]onsultation with legal advisers at the Department of Justice constitutes precisely the sort of 'give-and-take of the consultative process' that the deliberative process privilege was designed to protect." Br. for Appellee at 15 (quotations omitted). According to the Government, OLC's Opinion is not the FBI's "final decision about how, if at all, to alter its investigatory techniques," because "th[is] decision was the FBI's to make after consulting with OLC and any other parts of the government it chose to involve in its policy-making process." *Id.* (quotations omitted).

Because OLC cannot speak authoritatively on the FBI's policy, the OLC Opinion differs from memoranda we have found to constitute the "working law" of an agency. In each of these cases, to avoid the development of "secret law," the agency was required to disclose a document that represented a conclusive or authoritative statement of its policy, usually a higher authority instructing a subordinate on how the agency's general policy applies to a particular case, or a document that determined policy or applied established policy. In contrast, the OLC Opinion is more similar to the advice from the Legal Adviser to the Secretary of State pertaining to policy in the Middle East in *Brinton*, or the advice from the Army's General Counsel pertaining to the advisability of a certain contract in *Murphy*. OLC is not authorized to make decisions about the FBI's investigative policy, so the OLC Opinion cannot be an authoritative statement of the agency's policy. *See* Colborn Decl. at 1-2, *reprinted in* J.A. 18-19 ("OLC does not purport, and in fact lacks authority, to make policy decisions. OLC's

legal advice and analysis may inform the decisionmaking of Executive Branch officials on matters of policy, but OLC's legal advice is not itself dispositive as to any policy adopted.").

EFF argues that the OLC Opinion must be "working law" because it is controlling (insofar as agencies customarily follow OLC advice that they request), precedential, and can be withdrawn. Br. of Appellant at 22-24, 30-34. That the OLC Opinion bears these indicia of a binding legal decision does not overcome the fact that OLC does not speak with authority on the FBI's policy; therefore, the OLC Opinion could not be the "working law" of the FBI unless the FBI "adopted" what OLC offered. In *Brinton*, we rejected the appellant's claim that memoranda must be released because they constituted the "final opinions" of the Department of State. We explained that while the privilege does not protect final decisions or authoritative statements on agency policy, the "final opinions" of the Department of State's Legal Adviser, "who has no authority to make final decisions concerning United States policy in the Middle East," are not final decisions of the Department of State. 636 F.2d at 605. The same is true of the OLC Opinion in this case.

Even if the OLC Opinion describes the legal parameters of what the FBI is *permitted* to do, it does not state or determine the FBI's policy. The FBI was free to decline to adopt the investigative tactics deemed legally permissible in the OLC Opinion. Indeed, the OIG's report acknowledged that the FBI had "declined, for the time being, to rely on the authority discussed in the OLC Opinion." Br. for Appellee at 15-16 (citing OIG Report at 265 n.283, *reprinted in* J.A. 49). The OLC Opinion does not provide an authoritative statement of the FBI's policy. It merely examines policy options available to the FBI. Therefore, the OLC Opinion is not the "working law" of the FBI.

On this record, we hold that the OLC Opinion reflects

precisely the sort of "advisory opinion . . . comprising part of a process by which governmental decisions and policies are formulated" that is covered by the deliberative process privilege. *Pub. Citizen*, 598 F.3d at 875 (quotations omitted); *accord Brennan Ctr. for Justice at New York Univ. Sch. of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 203 (2d Cir. 2012) ("The [OLC] Memorandum does not constitute working law, or the agency's effective law and policy." (quotations omitted)); *Nat'l Council of La Raza v. Dep't of Justice*, 411 F.3d 350, 356 n.4 (2d Cir. 2005) (presuming OLC memorandum satisfies requirements of deliberative process privilege).

## C.   *Waiver by Public Adoption or Reliance*

In *Sears*, the Court explained that Exemption 5 does not apply "if an agency chooses *expressly* to adopt or incorporate by reference" a memorandum that would have otherwise been protected by the privilege. 421 U.S. at 161 ("[W]hen adopted, the reasoning becomes that of the agency and becomes *its* responsibility to defend."). The same day *Sears* was decided, the Court also held in *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, that the "adoption" exception to Exemption 5 did not apply to reports addressing whether government contractors were required to refund excessive profits under their contracts, even though the agency's decision agreed with the reports' conclusion. The decision clarified that in order for the exception to apply, it must be evident that "the reasoning in the report is adopted by the [agency] as *its* reasoning, even when [the agency's decision] agrees with the conclusion of a report." 421 U.S. 168, 184 (1975).

We have thus recognized that "the Court has refused to equate reference to a report's conclusions with adoption of its reasoning, and it is the latter that destroys the privilege." *Access Reports v. Dep't of Justice*, 926 F.2d 1192, 1197 (D.C. Cir. 1991) (a department head's "confused statement" in

testimony before a Senate committee that might be read as a reference to the privileged document "fell far short of the *express* adoption required by *Sears*"); *Common Cause v. IRS,* 646 F.2d 656, 660 (D.C. Cir. 1981) ("[C]asual allusion in a post-decisional document to subject matter discussed in some pre-decisional, intra-agency memoranda is not the express adoption or incorporation by reference which . . . would remove the protection of Exemption 5."). These decisions stand in contrast to *Afshar v. Dep't of State*, 702 F.2d 1125, 1140 (D.C. Cir. 1983), where the court held that when "predecisional recommendations . . . are expressly adopted in [a] final, nonexempt memorandum, . . . 'the reasoning becomes that of the agency and becomes *its* responsibility to defend.'" *Id*. at 1142 (quoting *Sears*, 421 U.S. at 161) (emphasis in *Sears*). In this case, EFF cannot point to any evidence supporting its claim that the FBI expressly adopted the OLC Opinion as its reasoning.

EFF argues that the FBI "adopted" the OLC Opinion by "approving[] public references in non-privileged agency documents (like the OIG report) and reliance in congressional testimony." Br. of Appellant at 36. EFF relies on two decisions in which the Second Circuit held that an agency waived the privilege by referencing an OLC memorandum in its dealings with the public. *Id.* (citing *Brennan Ctr.*, 697 F.3d at 204; *La Raza*, 411 F.3d at 357). But these cases are inapposite because, in each one, the agency *itself* publicly invoked the reasoning of the OLC memorandum *to justify* its new position.

In *La Raza*, the court found that the "Attorney General and his high-level staff made a practice of using the OLC Memorandum to justify and explain the Department [of Justice]'s policy and to assure the public and the very state and local government officials who would be asked to implement the new policy that the policy was legally sound." 411 F.3d at 358. In *Brennan Center*, a U.S. Agency for International Development guidance document referenced an OLC Opinion

as a basis for exempting U.S. non-governmental organizations from a requirement to pledge to oppose sex trafficking in order to receive aid. 697 F.3d at 191. And when the agency changed this policy, a director explained during Congressional hearings that OLC had changed its position, and he was "simply following . . . the advice" of OLC. *Id.* at 192 (quotations omitted).

This case differs from the cases cited by EFF because the public references to the OLC Opinion did not come from the FBI itself. Rather, the public references originated from the OIG and Congress. The OIG mentioned the OLC Opinion in its Report and Caproni was asked about it by members of Congress. However, the FBI never *itself* publicly invoked or relied upon the contents of the OLC Opinion. *Grumman* explained that the adoption exception only applies if "the reasoning in the [privileged document] is adopted by the [agency] as *its* reasoning." 421 U.S. at 184 (emphasis added). The OIG's references to the OLC Opinion do not establish that *the FBI* adopted the OLC Opinion as *its own* reasoning. Nor does Caproni's response to inquiries from members of Congress establish that the FBI adopted the OLC Opinion's reasoning as *its own*. Colborn explained that the OLC Opinion "has not been made public, and to the extent that it has been shared with others in the Government, these individuals would . . . only have been persons with an appropriate security clearance and a need to know—that is, individuals whose job responsibilities related to national security." Colborn Decl. at 6, *reprinted in* J.A. 23. Colborn made it clear that anyone who viewed the OLC Opinion "would have understood the need for confidentiality." *Id.*

When Caproni mentioned the OLC Opinion during congressional hearings, she noted that "[m]any members of Congress have asked questions about this OLC opinion." Caproni Testimony at 10, *reprinted in* J.A. 70. In other words, Caproni referenced the OLC Opinion in response to inquiries,

rather than affirmatively raising it to justify the FBI's policy. Caproni's testimony thus differs from the communications in *Afshar*, the congressional testimony in *Brennan Center*, and the statements in *La Raza*. In *Afshar*, the court found that the disputed memoranda in that case were predecisional when written, but the recommendations that they contained were not protected by the deliberative process privilege once they were "expressly adopted as the basis for agency action." 702 F.2d at 1140. In *Brennan Center,* a director of the agency explained that he changed positions "following" advice of OLC, and described that advice. 697 F.3d at 192. In *La Raza*, the District Court found that the Department of Justice had, "through the public statements of its representatives, incorporated the OLC Memorandum into Department policy." 411 F.3d at 355. In contrast, Caproni never claimed that the FBI's investigative tactics were justified by the OLC Opinion. To the contrary, she actually disavowed reliance on the OLC Opinion, stating that it "did not in any way factor into the FBI's flawed practice of using exigent letters between 2003 and 2006 nor did it affect in any way the records-retention decisions made by the FBI as part of the reconciliation project." Caproni Testimony at 10, *reprinted in* J.A. 70. Far from publicly using the OLC Opinion to justify the FBI's position, Caproni's testimony indicates that the OLC Opinion *did not* determine the FBI's actions or policy.

## D.  *Segregability*

It is undisputed that under FOIA non-exempt information that is "reasonably segregable" from exempt information must be disclosed. 5 U.S.C. § 552(b). EFF contends that the District Court "erred by failing to determine whether there was unclassified, factual information within the OLC Opinion that was 'reasonably segregable' from the Opinion's other content." Br. for Appellant at 50. We disagree. In a section entitled "Segregability," the District Court specifically held that "the Department has sufficiently established that no

portion of the OLC Opinion is reasonably segregable and releasable." 892 F. Supp. 2d at 104. This holding is supported by the record. *See* Colborn Decl. at 5-7, *reprinted in* J.A. 22-24.

In pressing its claim for segregability, EFF relies on *Loving v. Dep't of Defense* for the proposition that "the deliberative process privilege does not protect documents in their entirety; if the government can segregate and disclose non-privileged factual information within a document, it must." 550 F.3d 32, 38 (D.C. Cir. 2008) (citing *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993)). In response, the Government points out that:

> The OLC declarant explained that "[t]hose portions of the Opinion that are marked unclassified reflect other confidential factual as well as confidential legal communications provided by the FBI to OLC *for the purpose of obtaining legal advice.*" This statement confirms that the entire document reflects the full and frank exchange of ideas between the FBI and OLC, and that revealing portions of the document would reveal the substance of those privileged communications.

Br. for Appellee at 40 (quoting Colborn Decl. at 5-6, *reprinted in* J.A. 22-23 (emphasis added)).

We agree with the Government that EFF has "ignor[ed] the context in which factual statements were made [in asserting] that 'factual material cannot generally be withheld under the deliberative process privilege.'" *Id.* (quoting Br. for Appellant at 51). In other words, because context matters, the proposition advanced by EFF is not inviolate. This point was made clear by the en banc court in *Wolfe v. Dep't of Health and Human Serv.*, 839 F.2d 768 (D.C. Cir. 1988). In *Wolfe*, we explained that

> [i]n some circumstances, even material that could be

characterized as "factual" would so expose the deliberative process that it must be covered by the privilege. We know of no case in which a court has used the fact/opinion distinction to support disclosure of facts about the inner workings of the deliberative process itself.

*Id.* at 774 (citation omitted); *accord In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ("The deliberative process privilege does not shield . . . material that is purely factual, unless the material is so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations.").

Based on the declarations provided by the Government, the District Court correctly concluded that "the unclassified portions of the OLC Opinion could not be released without harming the deliberative processes of the government by chilling the candid and frank communications necessary for effective governmental decision-making." 892 F. Supp. 2d at 104 (citation, quotations, and alterations omitted). The reasoning in *Wolfe* is thus controlling here.

### E. *Exemption 1*

Because we find that the entire OLC Opinion is exempt from disclosure under the deliberative process privilege, there is no need for this court to determine whether certain portions of the OLC Opinion were properly withheld as classified under Exemption 1.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the District Court.